## MANION v. LOOMIS SANATORIUM.

(Supreme Court, Appellate Division, Third Department. May 6, 1914.)

1. HIGHWAYS (§ 184*)—NEGLIGENT USE—INJURY TO AUTOMOBILE—NEGLIGENCE.—CONTRIBUTORY NEGLIGENCE.

In an action for injuries to plaintiff's automobile, resulting from plaintiff's being compelled to run it across a depression on the side of a road in order to get by defendant's team, which had been driven into the highway from a lane and stopped diagonally across the way, leaving no space to the rear of the wagon through which plaintiff's car could pass, and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

leaving the space in front so slight as to compel plaintiff to run into the depression in passing, defendant's negligence and plaintiff's contributory negligence, if any, *held* for the jury.

[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 471–474; Dec. Dig. § 184.*]

2. BAILMENT (§ 35*)—INJURY TO BAILED PROPERTY—ACTION BY BAILEE.

Where plaintiff was operating an automobile under an agreement with the owner for a division of profits, and that plaintiff would return the car in as good condition as when he took it, necessary wear excepted, plaintiff could recover for injuries to the car resulting from defendant's negligent use of the highway, so as to compel plaintiff to drive the car across a depression to prevent a collision and pass defendant's team.

[Ed. Note.—For other cases, see Bailment, Cent. Dig. §§ 134–140; Dec. Dig. § 35.*]

Smith, P. J., and Kellogg, J., dissenting.

Appeal from Trial Term, Sullivan County.

Action by James Manion against the Loomis Sanatorium. From a judgment for plaintiff, and from an order denying defendant's motion for a new trial on the minutes, plaintiff appeals. Affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Carpenter & Rosch, of Liberty, for appellant.

Ellsworth Baker, of Hurleyville, for respondent.

LYON, J. [1] The only serious question involved in this appeal is whether the finding by the jury that the plaintiff was free from contributory negligence was against the weight of evidence. On the afternoon of June 30, 1910, the plaintiff was driving a heavy 30–35 horse power Darracq car, in which were seated five other persons, from Liberty on his way westerly to White Sulphur Springs, Sullivan county, N. Y. Soon after leaving Liberty, and while plaintiff was passing westerly along a public highway, defendant's team, driven by defendant's servant, attached to a heavy lumber wagon, drove out of a lane upon the northerly side of the highway and stopped diagonally crosswise of the highway, with the hind wheels in the north gutter, leaving no space at the rear of the wagon through which the plaintiff's car could pass, and leaving a space so narrow in front of the team that in turning out to pass through it the plaintiff ran across a depression upon the southerly side of the road, about 3½ feet deep, walled on each side, constituting the entrance to the basement of the barn, ruining the tires upon that side of the car, disarranging the machinery, and resulting in the car colliding with a telephone pole, which stood within the limits of the highway about 30 feet westerly of the depression. This action was brought to recover the damages to the car upon that occasion; the trial resulting in a verdict for the plaintiff of $200.15, the expense of making the repairs. The plaintiff was a duly licensed chauffeur and a machinist, having at that time had 3½ years' experience in running and repairing cars. He had run this car, which was of 1904 or 1905 model, for three seasons. The road over which plaintiff was traveling was an improved highway having an average down-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

grade of about 6.7 per cent.. for about 550 feet easterly of the place of the depression.

The plaintiff testified that he first saw the team and wagon coming towards the highway along the lane, which was about 60 feet west of the depression, when he was about 330 feet east of the depression, and that the team was coming upon a walk, and that as the team came out upon the highway the plaintiff blew his horn, at which the driver of the team looked up and then back at the team, and soon stopped .diagonally across the highway, leaving insufficient space for the car to pass in the rear of the wagon. The plaintiff testified that at the time of starting down the hill he was coasting, with the clutch disconnected and the foot brake applied, at a speed of about 20 miles per hour, which he held until he was within 150 feet or thereabouts of the team, when he slackened his speed and passed the heads of the horses at from 12 to 15 miles per hour; that as soon as the team stopped across the road he endeavored to reverse his car, which up to that time had been set at high speed, and for that purpose pulled the emergency brake and tried to throw the gear shifting lever into reverse, which he could not do, as it was a sliding gear transmission and could not be thrown into reverse .without throwing it through the other clutches; that as a result of plaintiff's effort to reverse the motion of his car, the transmission caught in the second speed gear, and plaintiff was unable to stop the car before reaching the team, although, with the machinery properly working to that end, the car could have been stopped. running on that grade at a speed of 20 miles per hour within 100 feet; that on passing over the depression the car tipped, throwing the plaintiff's foot off the reverse, letting the clutch in; and that the car, being in second speed, struck the telephone pole with much force. The plaintiff also testified that he was well acquainted with the highway and knew of the depression, and that he ran as close to the heads of the horses as he could without hitting them, tipping his head sideways, so as to avoid the heads of the horses and the pole of the wagon. The speed of the team as it came upon the highway was not given, otherwise than that it was at about the gait at which a man would walk.

The testimony of the plaintiff is uncontradicted that, had the driver of the team kept on, instead of stopping, there would have been ample room for the plaintiff to have passed between the rear end of the wagon and the bank, which the plaintiff testified he expected to do, having for that purpose kept his car along the right-hand side of the road until after the teamster stopped, when,. confronted with the emergency, he crossed to the left-hand side arid endeavored to pass in front of the team, and thus avoid a collision. ·The defendant did not call the teamster as a witness, nor offer any explanation whatever of his absence from the trial. In .view of the action of the teamster in passing upon the highway with a team and wagon, together 24 or 25 keet in length, with an approaching car in plain sight, and stopping diagonally across the roadway, the beaten part of which was from 14 .to 16 feet wide, instead of passing over to the south side of the highway, which was for him the right-hand side.on his way to Liberty, to which he was going, the question of defendant's negligence was

properly submitted to the jury, and its verdict was fully justified by the evidence. Furthermore, it cannot be said that as matter of law the plaintiff was guilty of contributory negligence, barring recovery, in view of the absence of evidence that the transmission had ever before caught, or that any difficulty whatever had ever before been experienced in reversing the motion of the car; that the plaintiff was an experienced chauffeur and machinist, and thoroughly familiar with this car by reason of having operated it for three seasons, and knew that he could stop it within 100 feet, traveling at the speed of 20 miles per hour, and hence in less than that distance traveling from 12 to 15 miles per hour, and that the teamster was crossing the road diagonally from the lane headed towards the barn upon the opposite side of the highway, and traveling at a pace which, the uncontradicted testimony shows, would, had he continued it, have taken him sufficiently far to have allowed the plaintiff, by continuing along the right-hand side of the highway, to pass in safety in the rear of the wagon. The charge, and responses of the court to the requests to charge, clearly and forcibly submitted to the jury the facts constituting contributory negligence as claimed by the defendant; and following the rendition of the verdict the trial judge denied the defendant's motion for a new trial.

[2] The verdict, as before stated, was simply for the expenses of repairing the car, which the plaintiff did not own, but which he was operating that season under an agreement with the owner for a division of profits, and by which the plaintiff was to return the car in as good condition as he took it, necessary wear excepted. The plaintiff is entitled to a trial by jury, and doubtless another trial would not change the result.

There were no exceptions taken requiring a reversal of the judgment. The judgment and order appealed from should be affirmed.

Judgment and order affirmed, with costs. All concur, except

SMITH, P. J. (dissenting). If an automobile were approaching a railroad crossing, over which was passing a train of cars, at the rate of 20 miles an hour, and without stopping its speed should run into that train, all would agree that the chauffeur was guilty of contributory negligence. If in his reckoning the train had just passed over so that he crossed safely, it would still be reckless driving. It is just such driving that makes the automobile almost a public nuisance to all who have occasion to use the streets. Assuming that the chauffeur reckoned that the defendant's lumber wagon would get across the street so that he could pass in safety, a farm hand might well become confused and unwisely stop his horses, and a prudent chauffeur in approaching such an obstacle would have his car under control. It would be a salutary rule to establish that car drivers who indulge in the practice of just grazing moving obstructions, whether they be persons or things, should be well penalized when their reckless calculation misses.

The failure to bring the clutch back to neutral did not in any way affect the driving of the car before the car came to the obstruction. It was only after the chauffeur found himself compelled to dodge around

the team, and in so doing was thrown from his seat, that the failure to get the clutch back to neutral had any effect. In cars with the transmission which this car had there is always a pedal to remove the power from the car, so that the brake may be applied effectively. In my judgment, the judgment and order should be reversed, on account of contributory negligence of the chauffeur.

KELLOGG, J., concurs in the dissent